UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TERRI Q. COLEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:14-cv-00425 |
| | ) REEVES/SHIRLEY |
| ARC AUTOMOTIVE, INC., | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Plaintiff Terri Coleman brings this action against her former employer, ARC Automotive, Inc. Coleman claims she was discriminated against because of her race in violation of Title VII of the Civil Rights Act and the Tennessee Human Rights Act.

## I. Statement of Facts

Coleman was hired as a general machine operator for ARC in May 1999, a position she held until she went on an extended medical leave of absence on June 3, 2014. In December 2010, Coleman underwent surgery for a hysterectomy. Coleman was granted FMLA leave for her absences and her claim for short-term disability benefits was also approved through MetLife. On February 8, 2011, six weeks after her surgery, Coleman had a follow-up appointment with her surgeon, Dr. Copas. During the visit, Coleman told Dr. Copas she was required to perform substantial, frequent overtime and she did not feel that she could return to work. Dr. Copas responded he could not give her any more time

off work "or it would be fraud." He released Coleman to return to work on February 14, 2011, without restrictions. Dr. Copas noted that Coleman's abdominal incision was well healed and she did not appear in acute distress. Coleman returned to work at ARC.

Coleman saw her primary care physician, Dr. Kirby on September 21, 2011, with complaints of abdominal pain. Dr. Kirby ordered a CT scan but did not limit Coleman's activities or suggest she take time off work.

On November 30, 2011, Coleman saw Dr. Dean Turner, OB/GYN about her continued pain. Coleman underwent exploratory surgery and removal of a cyst in January 2012. Coleman was granted FMLA leave to cover absences related to her January 2012 surgery. She also applied for and was granted short-term disability benefits. On February 6, 2012, Dr. Turner released Coleman to return to work on February 14, 2012, without restrictions.

Coleman went to the emergency room complaining of pain in her abdomen on February 15, 2012, and the doctor wrote a note for her to remain out of work, but releasing her to return without restrictions on February 20, 2012. Coleman returned to work on February 20, 2012, as scheduled. ARC approved her absences through February 19, 2012, and her short-term disability claim was also approved through February 19, 2012.

Coleman continued to experience abdominal pain and she returned to her primary care physician, Dr. Kirby, on February 23, 2012. Dr. Kirby instructed her to remain out of work until her next visit on March 13, 2012. Coleman informed Jackie Theg, ARC's Human Resources Manager, that she would be out of work until March 13, 2012.

Under ARC's attendance policy, Coleman was required to provide medical documentation to ARC to support a claim for FMLA leave. Coleman's absences beginning on February 23, 2012, were an extension of her prior FMLA leave, and ARC needed a doctor's note supporting the

2

additional time off. When Coleman returned to work on February 20, 2012, her claim for short-term disability benefits was closed. To reopen the claim after going back out on leave on February 23, 2012, Coleman was also required to provide updated medical information to MetLife.

As HR manager, Theg monitored all short-term disability claims for ARC. While she could see the status of a claim, she was not privy to any medical information shared with MetLife and was not privy to any notes made by the claims adjuster. Theg noted that Coleman's claim continued to show as "closed." Concerned about Coleman not receiving short-term disability payments, Theg followed up with Coleman to have her doctor provide information to MetLife so her short-term disability claim could be reactivated. On March 13, 2012, Coleman faxed a letter from Dr. Kirby that covered her absences beginning on February 23, 2012. Theg confirmed receipt of the letter and told Coleman that her absences were now covered under FMLA.

Coleman returned to work on March 19, 2012, with a note from Dr. Kirby releasing her to return to work without restrictions. Coleman was not disciplined and received no attendance "occasions" for her absences.

Because Coleman's short-term disability had still not been approved, Theg suggested that she call MetLife. During a call with MetLife employees, Coleman questioned whether Theg had access to her medical information, and was assured that Theg was not provided with any medical information and had no access to Coleman's medical information. On March 26, 2012, Dr. Kirby faxed his medical certification to MetLife supporting continuation of Coleman's short-term disability benefits from February 23, 2012 through March 18, 2012. MetLife then approved Coleman's claim for benefits covering that time period.

In May 2012, Coleman complained to Gabe Bucca, Vice-President of Human Resources for ARC, alleging Theg had contacted her doctors and pressured the doctors to return Coleman to

3

work too soon. Bucca investigated and spoke with Theg, who denied contacting Coleman's doctors. Coleman also called the employee hotline to report her allegations. Bucca met with Coleman, told her that Theg denied the allegations, and assured her it was not ARC policy to contact an employee's doctors. Bucca requested permission from Coleman to contact her doctors to investigate the allegations, but Coleman refused, and Bucca considered the matter closed.

In the Fall of 2012, Coleman scheduled appointments with doctors at Vanderbilt Medical Group because she was still experiencing pain in her abdomen. After review by several doctors, it was determined that additional surgery was not recommended.

In January 2013, Coleman filed a claim for worker's compensation benefits asserting that she was injured due to being forced to return to work too soon following her surgeries in 2010 and 2012. Coleman's claim was denied by the Tennessee Division of Worker's Compensation.

On June 1, 2012, ARC's time clock showed an extra punch on Coleman's time card making it appear she only worked from 11:50 a.m. to 3:02 p.m., when her regular shift was from 7:00 a.m. to 3:00 p.m. As a result, Coleman was not paid for the 4.9 hours the time clock showed she had not worked. Coleman questioned the missing 4.9 hours and it was corrected in her next pay check.

Coleman asserts she was improperly given an attendance point for taking what she thought was a vacation day on June 26, 2013. Under the Collective Bargaining Agreement between ARC and the union, employees are only allowed to take 10 single vacation days a year, all other days must be taken in blocks of time of 2 or more consecutive days. Because Coleman had taken her allotment of single vacation days for the year, she was given the day without pay and assessed a single attendance occasion. This brought Coleman to 8 attendance occasions, which resulted in a written warning. Coleman filed a grievance claiming her supervisor should have warned her she was not eligible for the vacation day before she took it. The grievance was denied because

company and union policy required employees to know where they stand with regard to their vacation days. This self-responsibility rule had been applied consistently to other employees. Coleman did not challenge the matter further.

Coleman next alleges Brubeck monitored her more closely, walking by her machine more often, but he never criticized her or disciplined her in any fashion.

Coleman requested and was granted FMLA leave beginning June 3, 2014, due to continued abdominal pain. She also requested and was granted short-term disability benefits beginning June 3, 2014. Coleman did not return to work at ARC and exhausted her 12 weeks of FMLA leave and 26 weeks of short-term disability leave. Her employment with ARC was terminated.

Coleman alleges Jackie Theg interfered with her medical care by forcing her doctors to release her back to work too soon following surgery in December 2010 and in January 2012. Coleman asserts that Theg did so because Coleman is black. Coleman also alleges she should have been allowed to take FMLA leave and short-term disability leave consecutively instead of concurrently. Coleman testified neither Theg nor anyone else at ARC ever made any comments to her that she deems racially derogatory.

In support of her claims, Coleman submits the affidavit of Paula Ousley, a white female General Machine Operator at ARC. Ousley stated she took a twelve and half week short-term disability leave after surgery, but was not required to fill out FMLA paperwork to obtain short-term disability leave; instead, she filled out the FMLA papers voluntarily. Ousley further states that she does not know of any other employees, with the exception of Coleman, who were required to get FMLA papers filled out to cover short-term disability

5

leave, or were required to fax or mail any follow-up doctor appointment notes during short-term disability leave. Coleman submits this disparate treatment is based on race.

## II. Motion to Strike

ARC moves to strike Ousley's affidavit because it is not based on personal knowledge and contains inadmissible hearsay. In order to be considered by the court on a motion for summary judgment, an affidavit must satisfy three requirements: (1) it must be made on personal knowledge; (2) it must set out facts that would be admissible in evidence; and (3) it must show that the affiant is competent to testify on the matters stated. Fed.R.Civ.P. 56(c)(4). Additionally, the party offering the affidavit must support the assertions made therein by citing to particular parts of materials in the record. Fed.R.Civ.P. 56(c)(1)(A).

Ousley is a General Machine Operator who does not work in Human Resources and has no responsibility for the processing or monitoring of any employee's leave of absence. There are no facts set forth in her affidavit to support her opinions. To the extent that Ousley is relying on what other ARC employees have said, such information would be inadmissible hearsay under Federal Rule of Evidence 801(c). Moreover, Ousley's affidavit contains no information that she has any personal knowledge of Coleman's situation, but suggests that it was similar to her own. Because Ousley's affidavit is not based on personal knowledge and contains no facts to support her opinions or citations to materials in the record, the court will not consider Ousley's statements in deciding the pending motion for summary judgment.

### III. Summary Judgment Standard

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.,* 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there

is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

## IV. Analysis

### A. THRA Claim

ARC argues Coleman's claim brought under the THRA is time barred. Coleman has not responded to this argument and her failure to respond is deemed to be a waiver of any opposition to the relief sought. E.D. Tenn. LR 7.2. The statute of limitations for a THRA claim is one year and the limitations period is not tolled by the filing of an EEOC or THRA charge. Coleman filed her complaint on September 15, 2014, but the last discriminatory act alleged was related to her return from surgery in February 2012. Therefore, her claim for violation of the THRA is untimely and will be dismissed.

### B. Racial Discrimination

To establish a *prima facie* case of racial discrimination, Coleman must show (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) a similarly-situated employee outside the protected class was treated more favorably than plaintiff. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). ARC argues Coleman suffered no adverse employment actions during her employment.

To establish that she was subjected to an adverse employment action, Coleman must show a materially adverse change in the terms or conditions of her employment. *Broska v. Henderson*, 70 Fed. Appx. 262, 266 (6th Cir. 2003). Courts consider termination of employment, a demotion, decreased wage or salary, less distinguished title, material loss of benefits, or diminished responsibilities as adverse employment actions. *See Kocsis v. Multi-Care Mgt. Inc.,* 97 F.3d 876,

8

886 (6th Cir. 1996). A change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities for the action to constitute an adverse employment action. *Id.*

Coleman does not allege that she has suffered a demotion, termination, any loss of pay or benefits, nor a change in the terms and conditions of her employment. Rather, she asserts she was not permitted to stay out on short-term disability leave following her December 2010 surgery and January 2012 surgery because Theg pressured her doctors to release her to return to work before she had time to heal. However, other than Coleman's unsubstantiated assertions, there is no proof in the record her doctors had any contact with Theg or anyone at ARC to release her to return to work earlier than was medically appropriate. Dr. Copas' notes provide that Coleman was released to return to work without restrictions on February 14, 2011, because she had sufficiently healed from surgery. Dr. Copas held Coleman out of work for nearly seven weeks. Dr. Callahan of the Vanderbilt Medical Group stated the standard time for recovery from a hysterectomy was six to eight weeks. Dr. Copas testified that he released Coleman to return to work on February 14, 2011 because in his medical opinion, she was physically capable of returning to work.

With regard to the January 2012 surgery, Coleman claims Dr. Turner's nurse, Ashley called her and told her that Theg had pressured Dr. Turner to return her to work on February 14, 2012. Ashley denied these allegations in writing to plaintiff on December 27, 2012. As reflected in Dr. Turner's February 14, 2012 notes, Coleman was doing well and had no complaints. Dr. Turner released her to resume her normal activities. Coleman requested additional time to respond to the motion for summary judgment so she could depose her doctors, but she failed to depose Dr. Turner or his nurse, Ashley. Coleman's allegations regarding her conversation with Ashley in February

9

2012, are thus inadmissible hearsay, insufficient as a matter of law to defeat ARC's motion for summary judgment.

Dr. Kirby, Coleman's primary care physician, also testified that no one at ARC contacted him or pressured him to return Coleman to work. He stated that when he released her to return to work on March 19, 2012, he did so because in his medical opinion, Coleman was physically capable of returning to work. He did not take her off work again until over two years later on June 2, 2014.

Coleman was approved for FMLA leave and short-term disability for both surgeries for as long as her doctors certified that she needed to be out of work. Moreover, Coleman requested and was granted additional leave related to her same condition on June 3, 2014. Coleman has not been denied FMLA leave or short-term disability benefits or had any action taken against her for use of such leave. Based on the record, the court cannot find that Coleman has suffered an adverse employment action as a result of taking FMLA or short-term disability leave.

Next, the court will consider several incidents Coleman alleges were adverse employment actions by ARC. First, with regard to the time card issue on June 1, 2013, when Coleman alleges she was not paid for 4.9 hours she worked, the record shows the matter was investigated and she was paid the 4.9 hours in the next paycheck. The attendance occasion was also removed. The court finds this incident does not constitute an adverse employment action or evidence of discriminatory behavior.

Coleman alleges she was given a written warning for accumulating eight attendance occasions. Coleman does not dispute that she did indeed have eight attendance occasions, or that under ARC and union policy, employees have the responsibility to keep track of their vacation eligibility. Under these circumstances, the court cannot find these attendance write-ups constitute

10

an adverse employment action. *See Handshoe v. Mercy Med. Ctr.*, 34 Fed. Appx. 441, 447 (6th Cir. 2002) (finding a warning letter about use of break time did not amount to an adverse employment action).

Coleman claims she was subjected to increased supervision because her supervisor would pass by her machine more often. However, she admits he never criticized her work, never disciplined her, and did not interfere with her work. Coleman also alleges that Lisa Hall, a co-worker was asked to spy on her and report to her supervisor, Brubeck. Coleman spoke with Charles Walker, her group leader, about the situation, it was resolved and not brought up again. Coleman admits she was never disciplined for anything Hall may have reported to Brubeck. These incidents do not, in the court's opinion, constitute adverse employment actions. *See Broska*, 70 Fed. Appx. at 267 (finding that an increase in supervision is a *de minimis* action that is not materially adverse).

### C. FMLA Leave/Short-Term Disability Leave

Coleman's final argument is that she was forced to take short-term disability leave concurrently with FMLA leave, which if taken consecutively, would have afforded her more time to heal from her surgeries. The court finds this argument without merit.

First, Theg testified ARC's policy is to run FMLA leave and short-term disability leave concurrently. Coleman points to no provisions in the Collective Bargaining Agreement or any ARC policy that FMLA and short-term disability leave run consecutively. To the contrary, FMLA regulations specifically provide that FMLA leave will run during any leave based on the employee's own serious health conditions, even if the employee is receiving short-term disability benefits. 29 C.F.R. § 825.207(d).

Second, Coleman cannot assert a claim for violation of the FMLA. The record shows she received all FMLA leave to which she was entitled, and ARC never disciplined her for any time missed related to her two surgeries. Even accepting Coleman's position that she should have been able to take FMLA and short-term disability leave consecutively, her leave would have expired in March 2015. Dr. Kirby testified that Coleman is still unable to return to work, so Coleman has suffered no adverse employment action because she would have been terminated when her leave expired in March 2015. Plaintiff was on leave for nearly 21 months, well beyond the combined 38 weeks of FMLA and short-term disability leave had they run consecutively.

## V. Conclusion

Because there is no evidence ARC interfered with Coleman's health care, her leaves of absence, or took any adverse action against her because of her race, ARC's motion for summary judgment [R. 20] is **GRANTED,** and this action is **DISMISSED in its entirety.**

_____
**UNITED STATES DISTRICT JUDGE**